Isidore Levine, J.
Petitioner, a most attractive, articulate and youthful looking woman, apparently in her forties, but fiery, volatile, ruthless, self-centered, cunning and uncompromising, sues the respondent herein contending that since November, 1969 he has refused and neglected to provide fair and reasonable support for her. Petitioner also contends that respondent was physically abusive to her and in particular on June 6, 1970 when without provocation he allegedly kicked her in the lower part of her spine, requiring X rays and medical treatment, when all she did, she claims, was to ask him for her weekly allowance.
Respondent, a practicing attorney for 30 years vehemently denies these allegations and claims that petitioner has been guilty of such gross misconduct that she is not entitled to support from him on a means basis.
Petitioner and respondent were married on May 20, 1962, approximately eight years ago. There are no children of the marriage.
While much of the testimony was in sharp contradiction between the parties, some critical issues were admitted by petitioner. The court, however, has had the special advantage of seeing, hearing and observing the manner of the witnesses on the stand, and evaluating their credibility.
From the credible evidence adduced at the trial, the court credits the testimony of respondent, and his witnesses, including respondent’s version of the alleged assault on petitioner on June 6, 1970, and finds that the petitioner did indeed grossly misconduct herself toward her husband.
The court finds that petitioner, who was obsessed with the desire to be in business for herself despite the respondent’s repeated requests to her to give up her business ventures and take care of the home, and despite the fact that he had already yielded to petitioner and given her no less than $2,000 for her business ventures which he opposed, went behind respondent’s back and approached several of his legal clients and friends *376 to loan her money or cosign loans for her. (Petitioner admitted approaching at least five whose names are in the record.)
In addition and most reprehensibly the court finds that petitioner told a number of respondent’s clients that he was not a good lawyer and that they should not do business with him. (Petitioner admitted that she may have made deprecating remarks about her husband as a lawyer.)
Two witnesses, both in the real estate business, professionally engaged with respondent, testified to specific instances of professional deprecation of respondent by petitioner.
Petitioner further provoked and exacerbated deteriorating relationships with her husband by failing to keep several appointments with her husband which were vital to his business relationships with clients. On several occasions respondent was compelled to entertain clients alone at his home and cook the dinner for them, since petitioner, who was aware of the social engagements came home several hours late, and on two occasions, corroborated by a witness for respondent who was present as ,a guest, came home at about 12 midnight. The testimony evidences further social and business relationships outside the home when petitioner failed to show up on time and respondent was required to entertain his clients and their wives alone.
Further exacerbations of the marital strain between the parties were the result of petitioner’s preoccupation with animals which resulted in dispossess proceedings against her and respondent because of charges of barking emanating from the apartment at all hours of the day and night because of the urination and defecation by the dogs on the terrace of this apartment (one of the respondent’s witnesses testified that petitioner’s home was a mess and that the dog vomited in the living room when he was present in the apartment on August 14, 1970, corroborating in part testimony by respondent that the apartment was constantly in a mess).
Adding up all of this testimony, together with other testimony in the record, the court concludes that the petitioner’s misconduct has been so gross as to warrant .a denial of her support by respondent on a means basis. One who would destroy her husband professionally and hence financially ought not to be permitted to look to him for support and share in his income on a means basis.
Eelevant on this issue of support are sections 236 and 200 of the Domestic Eelations Law.
Section 236 of the Domestic Eelations Law, insofar as applicable, reads as follows: “ In any action or proceeding brought *377 *' * * (2) for a separation * * * the court may direct the husband to provide suitably for the support of the wife as, in the court’s discretion, justice requires, having regard to the length of the time of the marriage, the ability of the wife to be self supporting, the circumstances of the case and of the respective parties. * * * Such direction may be made in the final judgment * * * notwithstanding that the court refuses to grant the relief requested by the wife * * * (2) by reason of the misconduct of the wife; unless such misconduct would itself constitute grounds for separation or divorce; or (3) by reason of a failure of proof of the grounds of the wife’s action or counterclaim.” (Italics the court’s.)
Section 200 of the Domestic Relations Law setting forth the grounds for a separation, insofar as applicable, reads as follows: ‘ ‘ Cruel and inhuman treatment * * * such that the conduct * * * so endangers the physical or mental well being of the plaintiff as renders it unsafe or improper for the plaintiff to cohabit with defendant. ’ ’
It becomes readily apparent from a reading of the above statutes that the court may direct support for the wife on a means basis even where the wife’s petition has been dismissed by reason of her misconduct, unless such misconduct would itself constitute a grounds for a separation or divorce as where the cruel and inhuman treatment endangers the physical or mental well being of the other spouse.
Accordingly, the court must deny support on a means basis where the aggrieved spouse would be entitled to a judgment of separation under section 200 of the Domestic Relations Law, and may grant or deny support on a means basis under section 236 of the Domestic Relations Law in the court’s discretion, as justice requires, under the circumstances of the case and of the respective parties. (See Brownstein v. Brownstein, 25 A D 2d 205.)
While the court finds that the conduct of the petitioner drove the respondent to distraction, the respondent failed to establish by medical or other evidence that such misconduct so endangered his physical or mental well being as would render it unsafe or improper for petitioner to cohabit with respondent, and accordingly the court is not mandatorily required to deny petitioner support on a means basis.
However, the court does find that the petitioner’s misconduct was so grievous and loathsome that in the exercise of discretion it orders no support for petitioner on a means basis.
On the issue of applicability of section 236 of the Domestic Relations Law to section 412 of the Family Court Act under *378 which petitioner has proceeded herein, see Matter of Steinberg v. Steinberg (18 N Y 2d 492). See, also, Matter of Loughlin v. Loughlin (58 Misc 2d 360) where the court held that recent amendments to section 236 of the Domestic Relations Law, e.g., that the court consider the length of time of the marriage and the ability of the wife to be self supporting in determining the amount of alimony awarded, the circumstances of the case and of the respective parties were applicable to the Family Court.
Having denied petitioner support on a means basis, the court now turns to consideration of support of petitioner on a public charge basis, should this eventuate, despite the court’s finding that the petitioner is fully able to support herself. It will be noted that the petitioner has had excellent background as a sales representative, interior decorator, and real estate saleswoman, and is attractive, articulate and youthful. However, since at the moment petitioner claims not to have any income, the court directs her support by respondent on a public charge basis for a period not to exceed four weeks from the date hereof for which purpose the attorneys for both sides are directed to confer with the Department of Social Services to agree upon a sum. Should the attorneys fail to come to agreement within one week after receipt of the decision and order herein, either attorney may petition the court for fixing of this sum. Should petitioner not be gainfully employed after four weeks from date, she may petition the court for the continuance of this order of support on a public charge basis.
Finally on the issue of the application of petitioner’s attorney for counsel fees, this court directs that petitioner’s attorney submit an affidavit of services within one week after receipt of this decision and order, with affidavit of service upon respondent’s attorney, who shall then have one week to reply thereto. The court notes that despite the denial of support to petitioner on a means basis, her attorney labored hard and well herein with superior legal capacity against an attorney of similar superior legal capacity and effectiveness. He should be paid for his efforts. (See Brownstein v. Brownstein, supra and this court’s own decision in Matter of Harvey v. Harvey, 62 Misc 2d 246.)
Notify attorneys for parties.